Timothy J. McCaffrey, Esq. (*pro hac vice to be filed*)
**FREEBORN & PETERS LLP**
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 360-6000
Facsimile: (312) 360-6520
Email: tmccaffrey@freeborn.com

—and—

Michael R. Johnson, Esq. (A7070)
Robert G. Wing, Esq. (A4445)
Jennifer R. Korb, Esq. (A9147)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
Salt Lake City, Utah 84101
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: mjohnson@rqn.com
Email: rwing@rqn.com
Email: jkorb@rqn.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| VR ACQUISITIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>WASATCH COUNTY, the JORDANELLE SPECIAL SERVICE DISTRICT, the JORDANELLE SPECIAL IMPROVEMENT DISTRICT NO. 2005-2, JAY PRICE and DAN MATTHEWS,<br><br>Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Civil No. 2:15-cv-00018-EJF<br><br>Honorable Evelyn J. Furse |

## NATURE OF COMPLAINT

1. In 2005, the Jordanelle Special Service District (the "**JSSD**"), a quasi-municipal corporation established by the Wasatch County Council (the "**Council**"), began the process of issuing bonds for the purpose of financing the construction of a sewage treatment facility (the "**Facility**") and other water and sewer improvements (collectively, "**the Improvements**") in an area within the JSSD that came to be known as the Jordanelle Special Improvement District No. 2005-2 (the "**Improvement District**"). The Improvements ultimately cost more than $50 million.

2. Certain members of the Council, along with certain individuals employed by the JSSD, intentionally manipulated the construction of the Improvements to personally benefit themselves, their family members and their cronies. For example, in at least one instance, hundreds of thousands of Improvement District dollars were illegally funneled through sham transactions to cronies of the Council and/or employees of the JSSD. Substantial Improvement District dollars were expended solely to achieve this illicit purpose.

3. Additionally, members of the Council and employees of the JSSD took advantage of their positions of public trust, and of their relationships with relatives, friends and cronies in control of water companies such as Lake Creek Irrigation Company ("**Lake Creek**"), to structure transactions to allow themselves to personally benefit from the construction of the Improvements, all to the detriment of the Improvement District landowners who were ultimately saddled with the responsibility to pay for all of the Improvements.

4. In fact, despite public representations to the contrary, the Facility was built – and was always intended by the JSSD to be built – to serve areas substantially outside the Improvement District.

5. In furtherance of this scheme, the JSSD provided inaccurate and misleading notice to Improvement District landowners as to the nature and scope of the Improvements, and concealed the scheme to personally benefit those in positions of authority on the Council and within the JSSD.

6. Thus, despite the regional scope of the Improvements, the JSSD capriciously, arbitrarily and inequitably targeted a select few landowners to pay for the entire project for the intended benefit of other landowners who were not subject to an assessment to pay for the Improvements.

7. Plaintiff VR Acquisitions LLC ("**Victory Ranch**"), as an owner of property within the Improvement District that was assessed to pay for the construction of the Improvements, has paid millions of dollars to the JSSD for the construction of the Improvements within the Improvement District, which were purportedly constructed to benefit Victory Ranch and a handful of other property owners exclusively within the Improvement District (the "**Assessed Owners**").

8. As a result of the JSSD's false notice, the JSSD lacked jurisdiction to enact the assessment ordinance that obligated Victory Ranch to pay for the Improvements.

9. The Council's and the JSSD's actions, and the actions of several of their agents – the abuse of their public office, undisclosed self-dealing and the issuance of false and misleading public notices – deprived Plaintiff of its rights under the United States Constitution, the Utah Constitution and applicable laws.

## PARTIES

10. Plaintiff Victory Ranch is a limited liability company organized and existing pursuant to the laws of the State of Delaware, with its principal place of business in Wasatch

County, Utah. Victory Ranch is and has at all relevant times been in the business of developing and selling real property that is located in Utah to buyers from around the United States.

11. Defendant Wasatch County is a county political subdivision of the State of Utah.

12. Defendant the JSSD is a special service district, as that term is defined and used in the Utah Special Service District Act, created by Defendant Wasatch County.

13. Defendant the Improvement District is a county improvement district purportedly created in 2006 by Resolution 2006-4 of the Wasatch County Council acting as the governing board of the JSSD pursuant to the Utah County Improvement District Act.

14. Defendant Jay Price ("**Price**") has been at all relevant times a member of the Wasatch County Council, and has also been a member of the JSSD Board. On information and belief, Defendant Price resides in Wasatch County, Utah.

15. Defendant Dan Matthews ("**Matthews**") was at all relevant times Manager of the the JSSD. Matthews resigned his position as manager of the JSSD in December of 2014. On information and belief, Matthews resides in Wasatch County, Utah.

## JURISDICTION & VENUE

16. This Court has original jurisdiction over Plaintiff's causes of action under the Constitution of the United States pursuant to 28 U.S.C. §§ 1331 and 1332(a). This Court has supplemental jurisdiction over Plaintiff's causes of action under Utah law pursuant to 28 U.S.C. § 1367.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391, in that defendants reside, are found and transact their affairs in this District, and a substantial part of the events giving rise to the claims asserted this action occurred in this District.

## FACTS

### A. The Real Property.

18. Victory Ranch is the owner of certain real property consisting of roughly 6,700 acres of land with a street address of 7865 North Victory Ranch Drive, Kamas, Utah.

19. The Victory Ranch property consists of two parcels, which are referred to herein as "Victory Ranch A" and "Victory Ranch B" (Victory Ranch A and Victory Ranch B are collectively referred to herein as the "**VR Property**").

20. The VR Property is being constructed as a luxury residential and vacation development. The VR Property includes a golf course and is intended to include luxury residences, a lodge, a member center and roughly 4,000 acres of untouched backcountry.

21. Victory Ranch purchased the VR Property from ATC Realty Sixteen, Inc. (the "**Prior Lender**"), a Wells Fargo special purpose entity that obtained title to the VR Property via deed in lieu of foreclosure from a real estate entity owned by Minnesota developer Robert Larsen (Larsen's entity is referred to herein as the "**Prior Owner**").

### B. The JSSD Plans for a Water Reclamation Facility to Benefit the JSSD and Beyond.

22. The Wasatch County Council created the JSSD in 1993.

23. The JSSD service area is located in northern Wasatch County, and one of the JSSD's primary functions is to provide and manage water and sewer infrastructure and service to residents within its boundaries.

24. The JSSD is divided into four development areas, designated as Phase 1, Area A, Area B and Area C.

25. At least as of 2002, the JSSD intended to construct a regional sewage treatment facility that was intended to provide wastewater treatment services to the entirety of the JSSD, and also to properties in neighboring special service districts.

26. At that time, the JSSD estimated the total cost for the first phase of the sewage treatment facility would be roughly $35.2 million.

27. The JSSD at that time intended that the sewage treatment facility would serve 10,694 equivalent residential units ("**ERUs**"), and thus estimated that the cost of the facility would equal roughly $3,290 per ERU. This facility was not built at that time.

### C. The JSSD Demands that Victory Ranch Pay A Large Portion of the Costs to Construct the Water Reclamation Facility in Order to Proceed With Its Development.

28. In or before 2005, Prior Owner sought to build its own sewage treatment facility on the VR Property, but the JSSD refused.

29. Rather, on information and belief, the JSSD saw Prior Owner's request for a sewage treatment facility as the opportunity it was looking for – to construct a regional sewage treatment facility that would service the entire JSSD, and possibly additional properties outside the JSSD.

30. In response to Prior Owner's request for a sewage treatment facility that would service Prior Owner's intended development, the JSSD approached neighboring landowners to determine whether such landowners would be interested in being given access to water and sewer improvements, and participating in the cost of constructing those improvements.

31. It was the JSSD's intent at that time to construct a sewage treatment facility that would ultimately be capable of servicing the entire JSSD service area, and additional properties outside the JSSD service area.

32. On information and belief, it was also the intent at that time of various individual members of the Council, including Defendant Price, to personally benefit from the construction of the Improvements. Defendant Price was in the position as a member of the Council to facilitate entitlements to developers, and to dictate terms and conditions with which developers would need to comply to develop their properties.

33. The cooperation of the landowners who would be affected by the construction of the sewage treatment facility, and related improvements, was critical. If a sufficient number of area landowners objected, the Defendants would lack the legal authority to proceed with the creation of the Improvement District and the issuance of bonds to finance the costs of construction.

34. Defendant Price worked with the JSSD's manager, Defendant Matthews, to achieve this purpose.

35. On information and belief, Defendant Price had or maintained interests in water rights, or intended to acquire water rights, and understood that he could personally profit from increased demand for water rights by developers in the JSSD and elsewhere in Wasatch County.

**D. The JSSD Adopts a Resolution and Issues a False and Misleading Notice Designating an Area Within the JSSD as a Special Improvement District that Will Benefit From the Water Reclamation Facility and Pay For It Through a Special Assessment.**

36. On October 19, 2005, the Council, acting in its capacity as the governing authority of the JSSD, adopted Resolution No. 2005-18 (the "**2005 Notice of Intention**"), declaring its intention to create the Improvement District and to finance the cost of the intended Improvements within the Improvement District through special assessments levied against the properties benefitted by the Improvements, those properties being located entirely within the

boundaries of the Improvement District. A true and correct copy of the 2005 Notice of Intention is attached hereto as Exhibit A.

37. The Improvement District was comprised of roughly 3,300 ERUs. Each ERU in this context refers generally to a residence a developer is entitled to build.

38. The 2005 Notice of Intention stated that it was, "the intention of the County Council of Wasatch County, Utah . . . to finance the cost of certain water and sewer improvements within the Jordanelle Special Service District . . . [and] to defray the costs and expenses of said improvements by special assessments to be levied against the properties to be benefited by such improvements . . . ." This statement was false and misleading in that the JSSD, including members of the Wasatch County Council, understood and intended that the Improvements would be paid for by the properties within the Improvement District, but would be used to benefit properties that would not be levied with special assessments.

39. The 2005 Notice of Intention also stated that, "[t]he [JSSD] hereby determines that it will be in the best interest of the Special Service District to create a special improvement district herein described to (a) finance the acquisition, construction and installation costs of certain water and sewer improvements to benefit certain properties within the Special Service District . . . ." This statement was false and misleading in that the JSSD understood and intended that the certain water and sewer improvements would be used to benefit properties outside of the Special Service District.

40. The 2005 Notice of Intention also stated that, "[t]he costs and expenses of the proposed Improvements shall be paid by a special assessment to be levied against the properties to be improved or which may be directly or indirectly benefited by any of such Improvements . . . ." This statement was false and misleading in that the JSSD understood and intended that

properties would directly or indirectly benefit by the Improvements, but that special assessments would not be levied against those properties to pay for the Improvements.

41. The 2005 Notice of Intention was false and misleading because the Council and the JSSD intended to construct improvements for the benefit of properties outside of the Improvement District, and did not intend to defray the costs of said improvements by special assessments levied against those properties. Instead, they intended that non-Improvement District landowners would pay fees for the benefit of using the Improvements, and that such fees could be set, collected and used within the discretion of the JSSD. In this manner, the JSSD intended to have the ability to collect money for the use of the Improvements outside of the notice and assessment process and procedures established by applicable Federal and Utah law.

42. The 2005 Notice of Intention was also false and misleading in that it failed to disclose the intent of Defendant Price, Defendant Matthews and others to expend bond funds and utilize their positions of public trust to construct the Improvements in a manner so as to allow themselves, their family members and their cronies to personally benefit from the Improvements.

43. The 2005 Notice of Intention provided the boundaries of the Improvement District.

44. Pursuant to the 2005 Notice of Intention, the boundaries of the Improvement District included only a portion of the JSSD.

45. The 2005 Notice of Intention further set forth the proposed Improvements, broken down into tiers, and identified properties to be benefitted by the Improvements and subject to the special assessment.

46. The Improvements to be constructed, according to the 2005 Notice of Intention, include, but are not limited to, a sewage treatment facility, sewer piping, sewer lift stations, power service and other items as set forth in the 2005 Notice of Intention.

47. The VR Property is located in the Improvement District within the JSSD, which includes properties to the South and East of the Jordanelle Reservoir.

48. The 2005 Notice of Intention specified that Victory Ranch A would be subject to the special assessment for tiers 1, 2, 4, 5, 6 and 9 with total ERUs of 400 and set the assessment at $21,400.00 per ERU.

49. The 2005 Notice of Intention specified that Victory Ranch B would be subject to the special assessment for tiers 1, 2, 4, 5, 7 and 9 with total ERUs of 349 and set the assessment at $20,600.00 per ERU.

50. The JSSD created the Improvement District in 2006 pursuant to Resolution 2006-04 of the Wasatch County Council acting as the governing board of the JSSD (the "**2006 Creation Ordinance**") pursuant to the Utah County Improvement District Act. A true and correct copy of the Creation Ordinance is attached hereto as Exhibit B.

**E. Improper Self-Dealing by Council Members and JSSD Employees.**

51. At the time in and around the Notice of Intention, various members of the Council, their families and/or cronies, and employees of the JSSD, including Defendant Price, owned or directly or indirectly had interests in or were affiliated with Lake Creek.

52. Lake Creek is a private company that owns water rights in Utah.

53. On information and belief, Defendants Price and Matthews intended that they, and/or their family members and cronies, personally benefit from increased land development in and around the JSSD.

54. Developers who developed property in and around the JSSD were required to acquire and deliver to the JSSD water rights in order to obtain the right to develop that property.

55. On information and belief, at all relevant times, Defendant Price had and/or acquired an interest in Lake Creek shares, and/or of Lake Creek water rights.

56. On information and belief, at all relevant times Defendant Matthews sat on the board of Lake Creek.

57. On information and belief, at all relevant times Defendant Price and others intended to leverage their positions on the Council, as well as their relationship with those with positions on the Council, and within the JSSD, to profit from the acquisition and sale of water rights to individuals and companies that intended to develop property in and around the JSSD. The construction of the Improvements provided a vehicle for them to take advantage of these opportunities for self-dealing for themselves and/or their family members and cronies.

**1. The JSSD's Illegal Acquisition of Property for the Construction of the Facility.**

58. In furtherance of their scheme, in 2006, the JSSD used Improvement District bond funds to acquire property to serve as the site for the Facility.

59. The 2005 Notice of Intention disclosed that the JSSD had budgeted $900,000 for the acquisition of land to serve as the site for the Facility.

60. The JSSD already owned land suitable for the Facility that was within the budget amount, but nevertheless undertook to use bond funds to acquire other land to serve as the site for the Facility (the "**Site**").

61. The JSSD, through Defendant Matthews, knowingly and intentionally used millions of dollars of bond funds to acquire more than 32 acres of land to serve as the Site for the Facility.

62. The JSSD, through Defendant Matthews and with the participation of Defendant Price, knowingly and intentionally used these bond funds to acquire substantially more land than was required for the construction of a Facility that was suitably sized to service only the properties within the Improvement District.

63. The JSSD intended to subsequently charge additional property owners fees to tie into the Facility, and thus expected to benefit from the subsequent expansion of the Facility at the expense of the Improvement District owners, including Victory Ranch, who paid for the Facility and for the acquisition of the Site.

64. In 2006, with Defendant Matthews's knowledge and acquiescence, Tom and Chad Flinders formed a limited liability company called Fishin with Bread, LLC ("**Fishin with Bread**"). The Flinders' intention was to acquire the Site, and then sell it to the JSSD for a quick and handsome profit.

65. On information and belief, prior to June of 2006, Fishin with Bread – through the Flinders – entered into a contract to purchase the Site from Robert and Susan Best.

66. The Bests had listed the Site for $2,790,000 and contracted to sell it to Fishin with Bread for $2,400,000.

67. On or about May 24, 2006, Defendant Matthews executed and delivered to Fishin with Bread a Real Estate Purchase Contract in which the JSSD offered to purchase the Site from Fishin with Bread for $2,790,000 – a price almost $400,000 more than would be paid by Fishin with Bread and the exact price for which the Bests originally listed the Site.

68. To facilitate Fishin with Bread's acquisition of the Site, Fishin with Bread issued a Promissory Note to First Utah Bank on or about June 20, 2006, in the amount of $2.5 million (the "**Note**"). The Note obligated Fishin with Bread to pay First Utah Bank the exorbitant

interest rate of 29.2 percent. The Note further obligated Fishin with Bread to pay a $25,000 Loan Origination Fee and a $12,500 Broker Fee (the Note and related loan documents are referred to herein as the "**Loan**").

69. Remarkably, to facilitate the issuance of the Loan by First Utah Bank to Fishin with Bread, on or about June 20, 2006, Defendant Matthews, on behalf of the JSSD, posted roughly $2.5 million in cash of JSSD public funds as security for the private Loan to Fishin with Bread in a checking account at First Utah Bank.

70. Several days later, Fishin with Bread closed its transaction and obtained title to the Site.

71. The JSSD paid off the Loan, and in doing so paid more than $65,000 for fees and interest on a 6-day loan, the sole purpose of which was to facilitate Fishin with Bread's ability to purchase the Site and profit at the expense of the Assessed Owners, including Plaintiff.

72. Having owned the Site for little more than 24 hours, Fishin with Bread then closed on the transaction to convey the Site to the JSSD, pocketing a substantial profit and having incurred no risk.

73. The JSSD used Improvement District bond funds to acquire the Site, and on information and belief, paid nearly $2.8 million for the acquisition.

74. Thus, with the JSSD's knowledge, acquiescence and active assistance, Fishin with Bread profited by nearly $400,000 from Improvement District bond funds by "flipping" the Site to the JSSD – having owned it for only a few days.

75. The JSSD paid more than $65,000 of Improvement District bond money to First Utah Bank for interest and fees, the need for which was solely generated by the scheme to funnel

nearly $400,000 of Improvement District bond money to Tom and Chad Flinders, via their Fishin with Bread entity.

### 2. The JSSD Intended That the Improvements Benefit Property Owners Outside of the Improvement District.

76. Between 2008 and 2009, the JSSD built a portion of the Improvements identified in the 2005 Resolution.

77. In a number of cases, the Improvements illegally deviated from the scope and location specified in the 2005 Notice of Intention.

78. Specifically, after the 2005 Notice of Intention was passed, the then-owner of the Talisman property, PWJ Holdings, and its principal Nathan Welch (collectively, the "**Former Talisman Owner**") amended its development plan. Among other changes, the Former Talisman Owner wanted additional infrastructure to accommodate the addition of a golf course (the additional infrastructure requested by the Former Talisman Owner is referred to herein as the "**Talisman Infrastructure**").

79. Although such infrastructure was not called for by the Improvement District bonds, Defendant Matthews and the JSSD, on a handshake, agreed to and did provide the requested infrastructure to the Former Talisman Owner, and paid for said infrastructure with Improvement District bond money.

80. The Former Talisman Owner never paid for the Talisman Infrastructure.

81. On information and belief, as a result of the use of bond money for self-dealing and improper purposes such as the acquisition of the Site and the construction of the Talisman Infrastructure, the JSSD did not have sufficient funds available to complete construction of the Improvements.

82. Rather, portions of the Facility, and a well that was required by the 2005 Notice of Intention to be constructed on the VR Property (the "**Late Improvements**"), were not completed as designed and were not paid for with bond funds.

### 3. The JSSD, Through the Twin Creeks Special Service District, Illegally Induces Red Ledges to Provide Twin Creeks with Overpriced Lake Creek Water Rights.

83. On information and belief, having funneled money for improper purposes – such as the construction of improper Improvements and the use of funds for the personal benefit of friends, relatives and/or cronies – the JSSD lacked sufficient money to complete the construction of the Improvements.

84. The JSSD, under the management and control of Defendant Matthews, entered into agreements to provide various water and sewer infrastructure – the Improvements – to and for the benefit of another Wasatch County Special Service District called the Twin Creeks Special Service District ("**Twin Creeks**"), also under the management and control of Defendant Matthews, even though the Improvements had been paid for by the Assessed Owners.

85. And Twin Creeks, again through Defendant Matthews, entered into agreements to allow Twin Creeks developers access to the benefit and use of the Improvements. One such agreement was with Red Ledges Land Development, Inc. ("Red Ledges"). Red Ledges is located in the neighboring Twin Creeks.

86. Among other charges and fees, the JSSD ultimately, directly or indirectly, has collected or will collect impact fees of $3,290.00 per ERU for the Facility from Red Ledges – amounts totaling nearly $4 million.

87. The JSSD used those funds to pay for – among other things – the completion of the construction of the Facility, and the completion of the construction (albeit inadequately) of the Late Improvements in 2013.

88. Further, as had been the intention of Defendants Price and Matthews from the beginning of their scheme, the Red Ledges agreements (which had been negotiated by Defendant Matthews and reviewed and approved by Defendant Price) required Red Ledges to deliver Lake Creek water to Twin Creeks. This directly and/or indirectly benefitted Defendant Price, and possibly others, by either allowing them to sell their Lake Creek water rights for a substantial profit or by driving up the market price for their Lake Creek water rights.

89. On information and belief, Red Ledges was induced to and did pay far more than a fair market price for the Lake Creek water rights that it obtained and delivered to Twin Creeks.

90. The conduct of Defendants Price and Matthews, as described herein, in addition to violating the United States Constitution and the Utah Constitution, also violated the Utah Public Officers' and Employees' Ethics Act.

**F. Improper and Illegal Assessments.**

91. On or about July 8, 2009, the Council, acting in its capacity as the governing authority of the JSSD, enacted Ordinance No. 09-10 (the "**2009 Assessment Ordinance**") which levied an assessment against certain properties within the Improvement District – including the VR Property – for the purpose of financing the Improvements (hereafter the "**Assessment**"). A true and correct copy of the Creation Ordinance is attached hereto as Exhibit C.

92. The 2009 Assessment Ordinance once again stated that, "the properties directly or indirectly benefited within the [Improvement] District will be assessed an assessment in an aggregate principal amount of $50,236,063.13."

93. The 2009 Assessment Ordinance defines the area to be assessed as the Jordanelle Special Service District Special Improvement District No. 2005-2, in other words, the Improvement District.

94. The Assessment against Victory Ranch A amounted to $22,572.75 per ERU, of which there were to be 400 on Victory Ranch A, making the Assessment for Victory Ranch A total approximately $9,029,100.00, not including interest.

95. The Assessment against Victory Ranch B amounted to $24,225.83 per ERU, of which there were to be 349 on Victory Ranch B, making the Assessment for Victory Ranch B total approximately $8,454,814.67, not including interest.

96. Accordingly, the Assessment against the VR Property totaled approximately $17,483,914.67, not including interest.

97. The Assessment allegedly could be paid over 20 years, with interest accruing at the exorbitant rate of 12 percent per annum. However, the Assessment provided for an increase in the interest rate from 12 percent to 20 percent if, after roughly five years, the holders of the bonds exercise an option that requires the JSSD to re-finance the bonds and the JSSD fails to do so.

98. On September 24, 2009, the JSSD recorded a Notice of Assessment Interest against those properties in the Improvement District and subject to the Assessment, including but not limited to the VR Property. A true and correct copy of the recorded Notice of Assessment Interest is attached hereto as Exhibit D.

99. Victory Ranch, for itself and by its successors and assignors, to date has paid more than $6 million in illegal assessments to the JSSD under and pursuant to the Assessment Ordinance.

**<u>FIRST CLAIM FOR RELIEF</u>**
**PROCEDURAL DUE PROCESS VIOLATION (FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION)**

100. Plaintiff incorporates and realleges by reference Paragraphs 1 – 99 of this Complaint, as if fully set forth herein.

101. The Due Process Clause of the Fourteenth Amendment of the United States Constitution provides that no, "State [shall] deprive any person of life, liberty, or property, without due process of law."

102. The JSSD has deprived and threatens to continue to deprive Victory Ranch of its property without due process of law.

103. Victory Ranch has a property right in the money it already paid to the JSSD under the Assessment Ordinance, in the money it must pay to the JSSD under the Assessment Ordinance in the future (including an approximately $2 million installment payment due in February of 2015) and a right to sell its property and to hold its property free from liens that diminish the value of its property.

104. The JSSD deprived Victory Ranch of these interests without due process of law because the JSSD has imposed liens and assessments on the VR Property by virtue of the 2009 Assessment Ordinance, and intends to continue to collect assessments from Victory Ranch under the threat of foreclosure of Victory Ranch's property if the assessments are not paid.

105. The JSSD deprived Victory Ranch of these interests without due process of law because the 2005 Notice of Intention failed to alert the public to the true nature and scope of the ordinance.

106. The 2005 Notice of Intention and 2006 Creation Resolution stated that the owners to benefit from the Improvements would be subject to assessment.

107. The 2005 Notice of Intention and 2006 Creation Resolution are false and misleading because the JSSD intended that many landowners, and not just those owning property in the Improvement District, would benefit from the Improvements, but those other owners are not subject to the Assessment, are not required to pay for the Improvements and are not at risk of the loss of their property if the Assessment is not paid.

108. The 2005 Notice of Intention and 2006 Creation Resolution failed to disclose that members of the Council and those in positions of authority at the JSSD, including its Manager Defendant Matthews, intended to personally benefit from the Improvements.

109. The 2005 Notice of Intention and 2006 Creation Resolution are false and misleading because members of the Council and those in positions of authority at the JSSD, including its Manager, Defendant Matthews, intended to personally benefit from the Improvements.

110. Thus, Victory Ranch's property – consisting of both money and the actual VR Property – was taken (and will continue to be taken in the future unless Victory Ranch can obtain judicial relief) without proper notice because the 2005 Notice of Intention and 2006 Creation Resolution were false and misleading, were not of such a nature to reasonably convey the required information and were not of such a nature to reasonably convey the required information to apprise Improvement District landowners of the pending action.

111. Plaintiff, and other Improvement District landowners, as a result of the false notice, did not have an opportunity to be heard and to object to the capricious and arbitrary decision to subject only certain benefitted landowners to the assessment.

112. The JSSD's failure to provide meaningful notice and an opportunity to be heard, and its continued attempts to collect the Assessment, is a violation of the Due Process Clause of the Fourteenth Amendment.

113. As a result, Plaintiff has suffered damages including the loss of its Constitutional Rights.

114. Plaintiff's Constitutional Rights continue to be impaired as a result of the conduct set forth in this Complaint. The JSSD has placed a lien on the VR Property, purportedly to secure Victory Ranch's obligation to pay assessments. That lien is a cloud on and encumbers Victory Ranch's property. Further, Victory Ranch faces the direct and imminent threat of having to pay an approximately $2 million assessment payment to the JSSD in February of 2015, even though Victory Ranch believes that the Assessment is illegal and unlawful, or run the risk of: (a) being charged default interest, legal fees and costs; and (b) having the VR Property become the subject of enforcement proceedings, including attempts by the JSSD to foreclose Victory Ranch's fee title to the property.

## SECOND CLAIM FOR RELIEF
## SUBSTANTIVE DUE PROCESS VIOLATION (FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION)

115. Plaintiff incorporates and realleges by reference Paragraphs 1 – 99 of this Complaint, as if fully set forth herein.

116. The Due Process Clause of the Fourteenth Amendment of the United States Constitution provides that no, "State [shall] deprive any person of life, liberty, or property, without due process of law."

117. The JSSD has deprived and threatens to continue to deprive Victory Ranch of its property without due process of law.

118. Victory Ranch has a property right in the money it already paid to the JSSD under the Assessment Ordinance, in the money it must pay to the JSSD under the Assessment Ordinance in the future (including an approximately $2 million installment payment due in February of 2015) and a right to sell its property and to hold its property free from liens that diminish the value of its property.

119. The JSSD deprived Victory Ranch of these interests without due process of law because the JSSD has imposed liens and assessments on the VR Property by virtue of the 2009 Assessment Ordinance, and intends to continue to collect assessments from Victory Ranch under the threat of foreclosure of Victory Ranch's property if the assessments are not paid.

120. The JSSD deprived Victory Ranch of these interests without due process of law because the 2005 Notice of Intention failed to alert the public to the true nature and scope of the ordinance.

121. The 2005 Notice of Intention and 2006 Creation Resolution stated that the owners to benefit from the Improvements would be subject to assessment.

122. The 2005 Notice of Intention and 2006 Creation Resolution are false and misleading because the JSSD intended that many landowners, and not just those owning property in the Improvement District, would benefit from the Improvements, but those other owners are not subject to the Assessment, are not required to pay for the Improvements and are not at risk of the loss of their property if the Assessment is not paid.

123. The 2005 Notice of Intention and 2006 Creation Resolution failed to disclose that members of the Council and those in positions of authority at the JSSD, including its Manager Defendant Matthews, intended to personally benefit from the Improvements.

124. The 2005 Notice of Intention and 2006 Creation Resolution are false and misleading because members of the Council and those in positions of authority at the JSSD, including its Manager, Defendant Matthews, intended to personally benefit from the Improvements.

125. Thus, Victory Ranch's property – consisting of both money and the actual VR Property – was taken (and will continue to be taken in the future unless Victory Ranch can obtain judicial relief) without proper notice because the 2005 Notice of Intention and 2006 Creation Resolution were false and misleading, were not of such a nature to reasonably convey the required information and were not of such a nature to reasonably convey the required information to apprise Improvement District landowners of the pending action.

126. Plaintiff, and other Improvement District landowners, as a result of the false notice, did not have an opportunity to be heard and to object to the capricious and arbitrary decision to subject only certain benefitted landowners to the assessment.

127. The JSSD's continued attempts to collect the Assessment constitute a violation of the Due Process Clause of the Fourteenth Amendment.

128. Plaintiff's Constitutional Rights continue to be impaired as a result of the conduct set forth in this Complaint. The JSSD has placed a lien on the VR Property, purportedly to secure Victory Ranch's obligation to pay assessments. That lien is a cloud on and encumbers Victory Ranch's property. Further, Victory Ranch faces the direct and imminent threat of having to pay an approximately $2 million assessment payment to the JSSD in February of 2015, even though Victory Ranch believes that the Assessment is illegal and unlawful, or run the risk of: (a) being charged default interest, legal fees and costs; and (b) having the VR Property become the subject

of enforcement proceedings, including attempts by the JSSD to foreclose Victory Ranch's fee title to the property.

129. The JSSD enacted the 2009 Assessment Ordinance pursuant to a scheme by which its members, and those in authority, intended to personally and illegally enrich themselves, their family members and/or their cronies.

130. The JSSD enacted the 2009 Assessment Ordinance as a result of jurisdiction the JSSD obtained by virtue of the passage of the 2005 Notice of Intention.

131. In passing the 2005 Notice of Intention, the JSSD knowingly and intentionally misled the Improvement District landowners regarding the JSSD's intended use of the Improvement District bond proceeds.

132. The JSSD's conduct in passing the 2005 Creation Resolution, the 2006 Creation Ordinance and the 2009 Assessment Ordinance by virtue of affirmative deception with the intention of engaging in improper self-dealing was a deliberate and arbitrary abuse of power by the JSSD.

133. The JSSD's conduct in passing the 2005 Creation Resolution and the 2009 Assessment Ordinance by virtue of affirmative deception with the intention of engaging in improper self-dealing was arbitrary, irrational or tainted by improper motive.

134. As a result, Plaintiff has suffered damages including the loss of its Constitutional Rights.

135. Plaintiff's Constitutional Rights continue to be impaired as a result of the conduct set forth in this Complaint. The JSSD has placed a lien on the VR Property, purportedly to secure Victory Ranch's obligation to pay assessments. That lien is a cloud on and encumbers

Victory Ranch's property. Further, Victory Ranch faces the direct and imminent threat of having to pay an approximately $2 million assessment payment to the JSSD in February of 2015, even though Victory Ranch believes that the Assessment is illegal and unlawful, or run the risk of: (a) being charged default interest, legal fees and costs; and (b) having the VR Property become the subject of enforcement proceedings, including attempts by the JSSD to foreclose Victory Ranch's fee title to the property.

**THIRD CLAIM FOR RELIEF**
**PROCEDURAL DUE PROCESS VIOLATION (ARTICLE I SECTION 7 OF THE UTAH CONSTITUTION)**

136. Plaintiff incorporates and realleges by reference Paragraphs 1 – 99 of this Complaint, as if fully set forth herein.

137. Section 7 of Article I of the Utah Constitution provides that, "[n]o person shall be deprived of life, liberty or property, without due process of law."

138. The JSSD has deprived and threatens to continue to deprive Victory Ranch of its property without due process of law.

139. Victory Ranch has a property right in the money it already paid to the JSSD under the Assessment Ordinance, in the money it must pay to the JSSD under the Assessment Ordinance in the future (including an approximately $2 million installment payment due in February of 2015) and a right to sell its property and to hold its property free from liens that diminish the value of its property.

140. The JSSD deprived Victory Ranch of these interests without due process of law because the JSSD has imposed liens and assessments on the VR Property by virtue of the 2009 Assessment Ordinance, and intends to continue to collect assessments from Victory Ranch under the threat of foreclosure of Victory Ranch's property if the assessments are not paid.

141. The JSSD deprived Victory Ranch of these interests without due process of law because the 2005 Notice of Intention failed to alert the public to the true nature and scope of the ordinance.

142. The 2005 Notice of Intention and 2006 Creation Resolution stated that the owners to benefit from the Improvements would be subject to assessment.

143. The 2005 Notice of Intention and 2006 Creation Resolution are false and misleading because the JSSD intended that many landowners, and not just those owning property in the Improvement District, would benefit from the Improvements, but those other owners are not subject to the Assessment, are not required to pay for the Improvements and are not at risk of the loss of their property if the Assessment is not paid.

144. The 2005 Notice of Intention and 2006 Creation Resolution failed to disclose that members of the Council and those in positions of authority at the JSSD, including its Manager Defendant Matthews, intended to personally benefit from the Improvements.

145. The 2005 Notice of Intention and 2006 Creation Resolution are false and misleading because members of the Council and those in positions of authority at the JSSD, including its Manager, Defendant Matthews, intended to personally benefit from the Improvements.

146. Thus, Victory Ranch's property – consisting of both money and the actual VR Property – was taken (and will continue to be taken in the future unless Victory Ranch can obtain judicial relief) without proper notice because the 2005 Notice of Intention and 2006 Creation Resolution were false and misleading, were not of such a nature to reasonably convey the

required information and were not of such a nature to reasonably convey the required information to apprise Improvement District landowners of the pending action.

147. Plaintiff, and other Improvement District landowners, as a result of the false notice, did not have an opportunity to be heard and to object to the capricious and arbitrary decision to subject only certain benefitted landowners to the assessment.

148. The JSSD's failure to provide notice and an opportunity to be heard is a violation of the Due Process Clause of Section 7 of the Utah Constitution.

149. As a result, Plaintiff has suffered damages including the loss of its Constitutional Rights.

150. Plaintiff's Constitutional Rights continue to be impaired as a result of the conduct set forth in this Complaint. The JSSD has placed a lien on the VR Property, purportedly to secure Victory Ranch's obligation to pay assessments. That lien is a cloud on and encumbers Victory Ranch's property. Further, Victory Ranch faces the direct and imminent threat of having to pay an approximately $2 million assessment payment to the JSSD in February of 2015, even though Victory Ranch believes that the Assessment is illegal and unlawful, or run the risk of: (a) being charged default interest, legal fees and costs; and (b) having the VR Property become the subject of enforcement proceedings, including attempts by the JSSD to foreclose Victory Ranch's fee title to the property.

## FOURTH CLAIM FOR RELIEF
## SUBSTANTIVE DUE PROCESS VIOLATION (ARTICLE I SECTION 7 OF THE UTAH CONSTITUTION)

151. Plaintiff incorporates and realleges by reference Paragraphs 1 – 99 of this Complaint, as if fully set forth herein.

152. Section 7 of Article I of the Utah Constitution provides that, "[n]o person shall be deprived of life, liberty or property, without due process of law."

153. The JSSD has deprived and threatens to continue to deprive Victory Ranch of its property without due process of law.

154. Victory Ranch has a property right in the money it already paid to the JSSD under the Assessment Ordinance, in the money it must pay to the JSSD under the Assessment Ordinance in the future (including an approximately $2 million installment payment due in February of 2015) and a right to sell its property and to hold its property free from liens that diminish the value of its property.

155. The JSSD deprived Victory Ranch of these interests without due process of law because the JSSD has imposed liens and assessments on the VR Property by virtue of the 2009 Assessment Ordinance, and intends to continue to collect assessments from Victory Ranch under the threat of foreclosure of Victory Ranch's property if the assessments are not paid.

156. The JSSD deprived Victory Ranch of these interests without due process of law because the 2005 Notice of Intention failed to alert the public to the true nature and scope of the ordinance.

157. The 2005 Notice of Intention and 2006 Creation Resolution stated that the owners to benefit from the Improvements would be subject to assessment.

158. The 2005 Notice of Intention and 2006 Creation Resolution are false and misleading because the JSSD intended that many landowners, and not just those owning property in the Improvement District, would benefit from the Improvements, but those other owners are

not subject to the Assessment, are not required to pay for the Improvements and are not at risk of the loss of their property if the Assessment is not paid.

159. The 2005 Notice of Intention and 2006 Creation Resolution failed to disclose that members of the Council and those in positions of authority at the JSSD, including its Manager Defendant Matthews, intended to personally benefit from the Improvements.

160. The 2005 Notice of Intention and 2006 Creation Resolution are false and misleading because members of the Council and those in positions of authority at the JSSD, including its Manager, Defendant Matthews, intended to personally benefit from the Improvements.

161. Thus, Victory Ranch's property – consisting of both money and the actual VR Property – was taken (and will continue to be taken in the future unless Victory Ranch can obtain judicial relief) without proper notice because the 2005 Notice of Intention and 2006 Creation Resolution were false and misleading, were not of such a nature to reasonably convey the required information and were not of such a nature to reasonably convey the required information to apprise Improvement District landowners of the pending action.

162. Plaintiff, and other Improvement District landowners, as a result of the false notice, did not have an opportunity to be heard and to object to the capricious and arbitrary decision to subject only certain benefitted landowners to the assessment.

163. As a result, Plaintiff has suffered damages including the loss of its Constitutional Rights.

164. Plaintiff's Constitutional Rights continue to be impaired as a result of the conduct set forth in this Complaint. The JSSD has placed a lien on the VR Property, purportedly to

secure Victory Ranch's obligation to pay assessments. That lien is a cloud on and encumbers Victory Ranch's property. Further, Victory Ranch faces the direct and imminent threat of having to pay an approximately $2 million assessment payment to the JSSD in February of 2015, even though Victory Ranch believes that the Assessment is illegal and unlawful, or run the risk of: (a) being charged default interest, legal fees and costs; and (b) having the VR Property become the subject of enforcement proceedings, including attempts by the JSSD to foreclose Victory Ranch's fee title to the property.

## FIFTH CLAIM FOR RELIEF
## VIOLATION OF 42 USC §§ 1983 & 1988

165. Plaintiff incorporates and realleges by reference Paragraphs 1 – 99 of this Complaint, as if fully set forth herein.

166. Wasatch County, the JSSD, the Improvement District, Defendant Price and Defendant Matthews, acting under the color of law, have deprived and threaten to continue to deprive Victory Ranch of its rights under the Fifth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. § 1983.

167. In depriving Victory Ranch of its constitutional rights, Wasatch County, the JSSD, the Improvement District and their agents and representatives acted according to law, custom and usage known to and acquiesced in or condoned by Wasatch County, the JSSD, the Improvement District and their governing authority.

168. As a result, this Court should enter a declaratory judgment stating that enforcement of the 2009 Assessment Ordinance – including but not limited to continuing to assess Victory Ranch to pay for the Improvements or taking any actions to enforce their alleged remedies against Victory Ranch or the VR Property – violates 42 U.S.C. § 1983, and should enter a permanent injunction enjoining enforcement of the 2009 Assessment Ordinance.

169. Victory Ranch also is entitled to damages in an amount to be determined at trial and to its attorney's fees pursuant to 42 U.S.C. § 1988.

170. As a result, Plaintiff has suffered damages including the loss of its Constitutional Rights.

171. Plaintiff's Constitutional Rights continue to be impaired as a result of the conduct set forth in this Complaint. The JSSD has placed a lien on the VR Property, purportedly to secure Victory Ranch's obligation to pay assessments. That lien is a cloud on and encumbers Victory Ranch's property. Further, Victory Ranch faces the direct and imminent threat of having to pay an approximately $2 million assessment payment to the JSSD in February of 2015, even though Victory Ranch believes that the Assessment is illegal and unlawful, or run the risk of: (a) being charged default interest, legal fees and costs; and (b) having the VR Property become the subject of enforcement proceedings, including attempts by the JSSD to foreclose Victory Ranch's fee title to the property.

## SIXTH CLAIM FOR RELIEF
## VIOLATION OF UTAH CODE ANN. § 11-42-401

172. Plaintiff incorporates and realleges by reference Paragraphs 1 – 99 of this Complaint, as if fully set forth herein.

173. The JSSD lacked jurisdiction to enact the 2009 Assessment Ordinance pursuant to Utah Code Ann. § 11-42-401 *et seq.* because the 2005 Notice of Intention issued by the JSSD failed to notify Improvement District landowners of the true nature and scope of the improvements and assessments to be levied.

174. The JSSD lacked jurisdiction to enact the 2009 Assessment Ordinance pursuant to Utah Code Ann. § 11-42-401 because the notice issued by the JSSD violated the due process clause of the U.S. Constitution.

175. As such, the Assessment Ordinance is void *ab initio*, and this Court should enter a declaratory judgment so finding.

**<u>SEVENTH CLAIM FOR RELIEF</u>**
**TAKING – EXPENDITURE OF ASSESSMENT FUNDS AND USE OF ASSESSMENT INFRASTRUCTURE**

176. Plaintiff incorporates and realleges by reference Paragraphs 1 – 99 of this Complaint, as if fully set forth herein.

177. The JSSD's illegal and unconstitutional use and management of the proceeds of the Assessment (the "**Assessment Proceeds**") and its use of the Improvements constitutes a taking of private property, in the guise of a special assessment, for public use without just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

178. An actual controversy and an actual dispute has arisen and now exists in that the JSSD's actions have deprived and continue to deprive Victory Ranch of its Constitutional rights.

179. As a direct and proximate result of the conduct set forth herein, Victory Ranch's rights, both personal and in its real property, have been and continue to be irreparably inured.

180. The JSSD acted under color of state law to unlawfully deprive Victory Ranch of rights guaranteed by the United States Constitution, including but not limited to by taking private property for public use without providing just compensation.

181. The post-deprivation procedures available to Victory Ranch are insufficient to neutralize the JSSD's violations and would, in any event, be futile.

182. The post-deprivation procedures and remedies available to Victory Ranch, if any, do not provide it the opportunity to be heard at a meaningful time or in a meaningful manner and are otherwise inadequate.

**<u>EIGHTH CLAIM FOR RELIEF</u>**
**TAKING – EXPENDITURE OF ASSESSMENT FUNDS AND USE OF ASSESSMENT INFRASTRUCTURE**

183. Plaintiff incorporates and realleges by reference Paragraphs 1 – 99 of this Complaint, as if fully set forth herein.

184. The JSSD's illegal and unconstitutional use and management of the Assessment Proceeds and its use of the Improvements constitutes a taking of private property, in the guise of a special assessment, for public use without just compensation in violation of Article I § 22 of the Utah Constitution.

185. An actual controversy and an actual dispute has arisen and now exists in that the JSSD's actions have deprived and continue to deprive Victory Ranch of its Constitutional Rights, as more fully set forth herein.

186. As a direct and proximate result of the conduct set forth herein, Victory Ranch's rights, both personal and in its real property, have been and continue to be irreparably injured.

187. The JSSD and the other Defendants have acted under color of state law to unlawfully deprive Victory Ranch of rights guaranteed by the Utah Constitution, including but not limited to by taking private property for public use without providing just compensation.

188. The post-deprivation procedures available to Victory Ranch are insufficient to neutralize the JSSD's and the other Defendants' violations and would, in any event, be futile.

189. The post-deprivation procedures and remedies available to Victory Ranch, if any, do not provide it the opportunity to be heard at a meaningful time or in a meaningful manner and are otherwise inadequate.

**NINTH CLAIM FOR RELIEF**
**EQUITABLE RESTORATION OF IMPROPERLY EXPENDED AND MANAGED ASSESSMENT FUNDS**

190. Plaintiff incorporates and realleges by reference Paragraphs 1 – 99 of this Complaint, as if fully set forth herein.

191. In equity, Victory Ranch is not responsible for and cannot be held to pay those Assessments that relate to such Assessment Proceeds as have been improperly and unconstitutionally expended and managed by the JSSD.

192. At all material times, Victory Ranch has acted equitably and in good faith with clean hands toward the JSSD, including but not limited to in paying Assessments as they have come due under a reservation of rights.

193. Victory Ranch is entitled to equitable restoration of the improperly and unconstitutionally expended and managed Assessment Proceeds, or to an equitable adjustment of the Assessment it allegedly owes, to reflect and account for not only improperly expended funds, but also to account for receipts on account of infrastructure paid for pursuant to the Assessments.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff VR Acquisitions LLC, prays that this Court enter judgment in its favor and against Defendants, jointly and severally, and grant Plaintiff the following relief:

a. For damages in an amount to be proven at trial;

b. For a declaration that Ordinance Nos. 09-10 and 2005-18 and Resolution 2004-02 are void *ab initio*, that all Assessments paid pursuant thereto must be returned to Plaintiff, and that the Assessment Lien that the JSSD has placed on Plaintiff's property must be removed;

c. For any injunctive relief that the Court deems just and proper;

d. For reasonable costs, expenses and attorneys' fees pursuant to 42 U.S.C. § 1988 and any other applicable law; and

e. For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on any and all issues triable by a jury.

DATED this 8th day of January, 2015.

Timothy J. McCaffrey, Esq. (pro hac vice to be filed)
**FREEBORN & PETERS LLP**
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 360-6000
Facsimile: (312) 360-6520

—and—

Michael R. Johnson, Esq. (A7070)
Robert G. Wing, Esq. (A4445)
Jennifer R. Korb, Esq. (A9147)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
Salt Lake City, Utah 84101
Telephone: (801) 532-1500
Facsimile: (801) 532-7543

/s/ Michael R. Johnson___________________
Michael R. Johnson
*Attorneys for Plaintiff*