IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| VR ACQUISITIONS LLC,<br><br>                                        Plaintiff,<br>vs.<br><br>WASATCH COUNTY, the JORDANELLE SPECIAL SERVICE DISTRICT, the JORDANELLE SPECIAL IMPROVEMENT DISTRICT NO. 2005-2, JAY PRICE, and DAN MATTHEWS,<br><br>                                        Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No.  2:15CV18 DAK-EJF |

      This matter is before the court on a Motion to Dismiss filed by Defendants Jordanelle Special Service District, Jordanelle Special Improvement District No. 2005-2, Jay Price, and Dan Matthews (collectively referred to as the "District Defendants").  The motion has been joined by Defendant Wasatch County.  A hearing on the motions was held on June 3, 2015.  At the hearing, Plaintiff VR Acquisitions LLC ("VR Acquisitions" or "Plaintiff") was represented by Timothy J. McCaffrey and Michael R. Johnson.  The District Defendants were represented by Mark R. Gaylord and Tyler M. Hawkins.  Wasatch County was represented by Barton H. Kunz.  Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the matter under advisement, the court has further considered the law and facts relating to this motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. BACKGROUND

Jordanelle Special Service District ("JSSD") is a special service district, created by Wasatch County in 1993 to provide sewer and water services to multimillion dollar residents located in the Jordanelle Basin of Wasatch County. Jay Price was one of seven Wasatch County council members during the relevant time period. Dan Matthews was the general manager of JSSD until recently resigning from that position. In February 2012, Plaintiff VR Acquisitions, a Delaware limited liability company owned by a large Chicago real estate firm (Stirling Bay), purchased approximately 6,700 acres of commercial property (known as "Victory Ranch") around the Jordanelle Basin in Wasatch County, Utah. Plaintiff purchased the Victory Ranch property from ATC Realty Sixteen, Inc. (the "Prior Lender"), a Wells Fargo special purpose entity that obtained title to the property via deed in lieu of foreclosure from a real estate entity owned by Minnesota developer Robert Larsen (Larsen's entity is referred to herein as the "Prior Owner").

Plaintiff alleges that Defendants decided as early as 2002 that they wanted to foster development within the Jordanelle Special Service District ("JSSD") and neighboring Wasatch County properties by the development of a sewage treatment facility that would service properties around the Jordanelle Basin (the "Improvement District") and facilitate substantial commercial development.[1] Though that specific plan did not come to fruition, Plaintiff claims

---

[1] Defendants explain that with proposed and planned development exploding in the Jordanelle Basin, JSSD committed to conduct a pilot study to establish the feasibility of constructing a new sewer treatment facility that would service JSSD and a sister special service district. Accordingly, JSSD engaged Franson-Noble & Associates, Inc. to prepare the Water

that public officials who stood to benefit from the sale or lease of water rights to developers in the area around the Jordanelle Basin (including Defendants Price and Matthews) hatched a scheme to develop a sewage treatment facility in the Improvement District (the "Facility"), and to finance the construction of the Facility, along with other water and sewer infrastructure, on the backs of Improvement District landowners, including the Prior Owner.

According to Plaintiff, Defendants Price, Matthews, and others intended to then allow other developers outside of the Improvement District, and indeed outside of the JSSD, to access and benefit from the Improvements that were paid for by the Improvement District landowners. This plan, claims Plaintiff, would allow them to personally benefit and profit from the sale and/or lease of water rights to developers who would now be able to develop their property–a prospect that was not possible without the water and sewer infrastructure to which they would need to connect.

Plaintiff alleges that, to facilitate their plan, Defendants Price and Matthews participated in and facilitated the creation of the Improvement District, but despite their intent to later tie other developments into the Facility (which allegedly would allow the Defendants personally, and/or their family members and friends to earn substantial fees and profit), they intentionally omitted that intention from the notice distributed to those landowners who

---

Reclamation Facility Impact Fee Study ("WRF Study"), which was completed in March 2002. According to the District Defendants, JSSD's receipt of the WRF Study was merely a prudent governmental initiative to provide guidance on the then-expected potential needs within the Jordanelle Basin. At that time, neither JSSD nor its governing body (the Council) had made any decisions regarding the actual construction of a water reclamation facility.

would ultimately pay for the construction.  Plaintiff asserts that Defendants Price and Matthews knew that if a sufficient number of affected landowners appeared and objected to the Improvement District's creation, the JSSD would not have the ability to proceed with the creation of the Special Improvement District necessary for the success of their plan, and thus, they issued a non-controversial and false notice that was intended to quash objections and facilitate passage of the ordinance.

In the 2005 Notice of Intention, according to Plaintiff, Defendants represented to the affected landowners that the improvements would be paid for by the properties they benefitted.  Plaintiff claims this representation was false because Defendants intended to allow other developers to tie into the improvements in the future – and to charge fees to and personally profit from those developers in the process.

Plaintiff alleges that Defendants' plan worked, and the ordinance passed.  Defendants then used bond funds in furtherance of their scheme, according to Plaintiff, by acquiring far more land than was needed for an Improvement District-only facility and paying nearly $2 million more than an appropriate parcel would have cost.  Plaintiff asserts that the land Defendants acquired was better situated and large enough to allow for the expansion of the Facility to handle capacity far in excess of that which could ever be needed by Improvement District landowners.

In its Complaint, Plaintiff has asserted nine Claims for Relief, including claims for federal and state procedural and substantive due process violations; a claim for violation of Utah Code Annotated § 11-42-401, claims for federal and state constitutional violations for the taking of

private property without just compensation, and a claim for equitable restoration of improperly expended and managed assessment funds. Plaintiff seeks, among other things, damages and a declaration that Ordinance Nos. 09-10 and 2005-18 and Resolution 2004-02 are void *ab initio* and that all assessments paid pursuant thereto must be returned to Plaintiff and the Assessment Lien that the JSSD has placed on Plaintiff's property must be removed.

Defendants, to the contrary, argue that Plaintiff is seeking to avoid having to pay for legitimate assessments levied against its property over five years ago, and almost ten years after Plaintiff's predecessor-in-interest (the Prior Owner) requested that Defendants construct a reclamation facility. Defendants claim that, based on the interest expressed by the Prior Owner and five other property owners, JSSD, by and through its seven-member governing body, unanimously voted to notify the public, and in particular the property owners who would be collateralizing their property to finance the design and construction of the Improvements, that JSSD was creating an assessment area ("Area C") to construct Improvements for the benefit of the property owners within Area C. In compliance with Utah law, according to Defendants, the 2005 Notice of Intention was mailed to all property owners within the proposed assessment area and published in the Wasatch Wave. Neither the Prior Owner (*i.e.*, Mr. Larsen) nor any other property owner voiced any objection to the 2005 Notice of Intention, the contents therein, or JSSD's intention to create Area C.

Defendants assert that with the support and full knowledge of all of the property owners, in February 2006, the seven member Wasatch County Council unanimously passed the Creation Resolution. On June 23, 2009, with approximately ninety-percent of the

Improvements completed and the bond anticipation notes coming due, JSSD caused a Notice of Proposed Assessment to be recorded against all of the property owners within Area C.  As required by Utah law, copies of the Notice of Proposed Assessment were mailed to all property owners within Area C, including the Prior Owner, and published in the Wasatch Wave.  The Notice of Proposed Assessment provided notice to all property owners affected by the passage of the assessment that a Board of Equalization had been appointed and that it would hold hearings on June 30, July 1, and July 2, 2009 to allow any interested party to voice objections to the proposed assessment.  The Board of Equalization met as required and then made findings and recommendations to the governing body of JSSD.

On July 8, 2009, the County Council, as the governing board of JSSD, unanimously adopted an Assessment Ordinance levying an assessment against all the property owners within Area C, including the Victory Ranch property.  In doing so, the governing board of JSSD adopted the recommendations of the Board of Equalization, which included making adjustments to the assessment at the request of the Prior Owner.  Additionally, the governing body affirmed the Board of Equalization's findings that "the Assessment List is just and equitable and that the Improvements constitute a benefit to the properties to be assessed."  A copy of the Assessment Ordinance was provided to the property owners in Area C.  No objections were filed by any of the affected property owners within Area C or any other party, including the Prior Owner, either before or at the July 8, 2009 public hearing when the Assessment Ordinance was adopted.

The Assessment Ordinance then put all owners on notice that if "after the expiration of

the 30-day period," the Assessments Bonds "issued or to be issued . . . shall become incontestable as to all persons who have not commenced the action and served a summons as provided . . . ; and [n]o suit to enjoin the issuance or payment of the Assessment Bonds, the levy, collection or enforcement of the assessments . . . may be instituted."  Significantly, none of the property owners, including the Prior Owner, objected to or challenged the Assessment Ordinance.  Nor did any property owner file an action to contest the assessment or the proceedings to levy the assessment within 30 days after the effective date of the Assessment Ordinance.

On or about November 1, 2009, the District sent notice to all property owners of record of their right to elect to either pay the assessment in its entirety or pay the assessment over twenty years.  On February 1, 2010, the Prior Owner made the first assessment payment ($2,088,990.07) to Zions Bank, as trustee.  On August 1, 2010, the Prior Owner made a deferred interest payment ($931,094.30) as required by the Assessment Ordinance.  Defendants assert that, due to the Great Recession, on November 10, 2010, a Wells Fargo Bank (Lender) sub-holding entity, ATC Realty Sixteen, Inc. ("ATC Realty"), obtained title to Victory Ranch via a deed in lieu of foreclosure from the Prior Owner.  ATC Realty held title to the Victory Ranch property for over two years during which time it made the required annual assessment payments on February 1, 2011 and 2012 without objection.

On May 2, 2012, almost two years after Wells Fargo took possession of the Victory Ranch property, and with full knowledge and subject to the Assessment Ordinance and lien that had been levied against the Victory Ranch property in 2009, Plaintiff purchased the Victory

Ranch property for a purchase price of between $16 and $20 million. According to Defendants, Plaintiff developed and marketed the property as an exclusive private community. At the time, the assessment liens created by the establishment of the District in 2005 and adoption of the Assessment Ordinance in 2009 were a matter of public record and were an encumbrance on approximately half of the 6,700 acres that constitute the Victory Ranch property.

Plaintiff does not allege that the Notice of Intention in any way failed to comply with Utah law, but it claims that the Notice was constitutionally deficient because it failed to disclose (1) that the improvements to be constructed would be used to benefit others who would not pay a proportionate share of the costs of the improvements, and (2) Defendants intended to personally benefit from the improvements.

## II. STANDARD OF REVIEW

On a motion to dismiss, the court must accept all well-pleaded facts as true, construe those facts liberally in a light most favorable to the plaintiff, and "resolve all reasonable inferences in plaintiff's favor." *Seamons v. Snow*, 84 F.3d 1226, 1231 (10th Cir. 1996). Generally, courts may not look outside the borders of the complaint when determining whether to grant a 12(b)(6) motion to dismiss. *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001). "If, on such a motion, 'matters outside the pleading are presented to and not excluded by the court,' the court should normally treat the motion as one for summary judgment pursuant to Federal Rule of Civil Procedure 56." *Roth v. Jennings*, 489 F.3d 499, 509 (10th Cir. 2007) (quoting Fed. R. Civ. P. 12(d)). In certain circumstances, however, courts may consider attached exhibits, documents incorporated by reference, and documents central to

the complaint. *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013); *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted).  As long as no party disputes their authenticity, these documents themselves may be considered without converting the Rule 12(b)(6) motion into a motion for summary judgment.  *Toone v. Wells Fargo Bank*, N.A., 716 F.3d 516, 521 (10th Cir. 2013); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Cnty. of Sante Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).

Thus, in deciding the instant motion, the court has accepted the Plaintiff's non-conclusory allegations as true but has also considered various documents outside the Complaint, including the exhibits attached to Plaintiff's Complaint.  No party has disputed the authenticity of these documents.

### III.  DISCUSSION

The court finds that all Plaintiff's claims fail for at least four independent reasons, which the court will discuss below.[2]

**A.**   ***Plaintiff's Claims Are Barred by the 30-Day Limitations Period Set Forth in the Utah Assessment Area Act.***

First, this court has no jurisdiction to decide this dispute because Plaintiff failed to avail itself of the exclusive remedy under Utah law for challenging an assessment ordinance.  Section 106 of the Utah Assessment Area Act states that an "action under this section [106] is the

---

[2] Because of these rulings, it is unnecessary for the court to address Defendants' additional bases for dismissal.

exclusive remedy of a person who claims an error or irregularity in an assessment or in any proceeding to designate an assessment area or levy an assessment." Utah Code Ann. § 11-42-106(3)(a). Section 106 also provides that an "action [contesting an assessment or any proceeding to designate an assessment area or levy an assessment] may not be commenced against and a summons relating to the action may not be served on a local entity more than 30 days after the effective date of the assessment resolution or ordinance . . . ." *Id*. at § 11-42-106(2)(b).

Plaintiff filed this action on January 9, 2015, over seven years after the Creation Resolution was adopted and five years after the Assessment Ordinance was adopted. In other words, long after the 30-day period had passed. Because Plaintiff is attempting to "attack or question in any way the legality of . . . [the] assessment," Section 106(2)(b) applies, and Plaintiff's claims are barred.[3]

**B.**   ***Even if Plaintiff's Claims Weren't Barred by the Utah Assessment Area Act, Plaintiff's Claims Are Barred by a Four-Year Statute of Limitations.***

Even if the above-mentioned statute did not control Plaintiff's claims, the court finds that the claims are subject to, at most, a four-year statute of limitations. Utah Code Ann. § 78B-2-307(3). The claims are time-barred because they accrued no later than 2009, when the assessment was levied against Victory Ranch.[4]

---

[3] *See also* Docket No. 123-1, *Cummings Land & Livestock, LLC v. JSSD*, Order Granting in Part and Denying in Part Motion to Dismiss, at 4–6, attached to Defendants' Reply Memorandum as Ex. 1.

[4] Plaintiff argues that the statute of limitations was not triggered until VR Acquisitions purchased Victory Ranch. But if Plaintiff's argument is credited, a property owner could buy

In *Branting v. Salt Lake City,* 153 P. 995 (Utah 1915), Salt Lake City had passed an ordinance "by virtue of which a certain local improvement, to wit, a sewer, was ordered constructed, and a special tax was assessed and levied upon the abutting property to defray the cost of constructing the same." *Id.* at 996. The sewer "was ordered, and the notice . . . was published in the year 1906." *Id*. After the sewer was complete, the landowners "instituted [an] action to annul the proceedings whereby the tax was assessed," because, they argued, the City had no authority to assess in excess of $1.30 —the amount given in the notice. *Id*. at 997. In applying Utah's statute of limitations, the court first noted that Utah law provided that an "action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued." *Id*. at 1000. The court then characterized the relief sought by plaintiff-landowners as seeking "to declare certain proceedings whereby a certain tax was assessed and levied against [landowner's] property void and of no effect and to annul said proceedings." *Id*. Based on the relief sought, the court applied the four-year statute of limitations. *Id*. at 1001 and found that the landowner's cause of action "accrued when the proceedings complained of culminated in the making of the assessment and the levying of the tax in question and, that being nearly five years before the action was commenced, it was barred." *Id*.

As in *Branting*, Plaintiff here is essentially asking this court "to declare certain

---

itself another four years by simply transferring title to its property to a shell entity. Plaintiff has not provided any authority to support such a proposition.

11

proceedings whereby a certain tax was assessed and levied against [landowner's] property void and of no effect and to annul said proceedings." *Id*. at 1000; *see*, *e.g.*, Compl. at 33 (praying for "a declaration that Ordinance Nos. 09-10 and 2005-18 and Resolution 2004-02 are void *ab initio*, that all Assessments paid pursuant thereto must be returned to Plaintiff, and that the Assessment Lien that the JSSD has placed on Plaintiff's property must be removed").

Thus, all Plaintiff's claims are governed (at least) by Utah's four-year statute of limitations because they are "for relief not otherwise provided for by law." Utah Code Ann. § 78B-2-307(3).   Plaintiff's claims accrued no later than 2009.  JSSD adopted Resolution 2005-18 on October 19, 2005, and, pursuant to that resolution, sent the 2005 Notice to property owners within the Improvement District.  The 2005 Notice plainly notified property owners within the Improvement District that an assessment would be levied "as provided by the laws of Utah on all parcels of real property within the Improvement District."  It also made clear, among other things, that payment for the improvements by way of the assessments was the sole responsibility of the landowners and that JSSD "will not assume and pay" the assessments.

On November 23, 2005, JSSD held a hearing to consider all protests related to the proposed creation of the improvement district.  When no protests were lodged, JSSD passed the Creation Resolution in February, 2006.  Immediately thereafter, JSSD issued millions of dollars in "interim warrants to finance the initial costs of construction" and commenced building the Improvements.  "On June 30, 2009, July 1, 2009, and July 2, 2009, the Board of Equalization held hearings to hear objections and corrections to any proposed assessment. Again, property owners were given the opportunity to be heard and object to the costs and

nature of the Improvements constructed for their benefit.  When no one objected, on July 8, 2009, JSSD enacted Ordinance No. 09-10 levying an assessment against the landowners (the "Assessment Ordinance"), including Plaintiff.  The Assessment Ordinance became effective on July 15, 2009.  The thirty-day period for challenging the Assessment Ordinance expired on August 14, 2009.  *See* Utah Code Ann. § 11-42-106.  On September 24, 2009, JSSD recorded a Notice of Assessment Interest against Plaintiff's property.

Against this background, the court finds that the latest a claim challenging the constitutionality of the creation of the Improvement District and the levying of assessments became ripe was on September 24, 2009, when the Notices of Assessment Interest were recorded against the property of each landowner within the Improvement District.  Plaintiff's Complaint was filed January 8, 2015–over five years after the effective date of the Assessment Ordinance and over a year after the statute of limitations expired.  Plaintiff's claims are therefore barred by the statute of limitations.

C.  ***Plaintiff's Constitutional Rights Were Not Violated Because Plaintiff Did Not Exist at the Time.***

Even if Plaintiff's claims were not time-barred, Plaintiff still cannot demonstrate Article III Standing because, among other things, Plaintiff did not even exist in 2005 when Defendants issued the alleged constitutionally deficient 2005 Notice of Intention.  Constitutional rights are nontransferable, and Plaintiff cannot now assert the constitutional rights of the prior owners of

the Victory Ranch property.[5]  Plaintiff has not cited any authority for the notion that a company's purported due process rights can be violated by an allegedly faulty notice issued seven years before the company came into existence, and the court is not aware of any such authority.  Indeed, the Tenth Circuit has recognized that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *See Aid for Women v. Foulston*, 441 F.3d 1101, 1111 (10th Cir. 2006).

Plaintiff's claims are further foreclosed by the Tenth Circuit's decision in *Kemmerer Coal Company v. Brigham Young Univ.*, 723 F.2d 54 (10th Cir. 1983).   In *Kemmerer*, the plaintiff sought to quiet title in certain coal deposits due to an assessor's mistake.  *Id*. at 54–55.  Kemmerer argued that its due process rights were violated because its predecessor-in-interest, San Rafael Fuel Company, did not receive notice of the tax assessment on the coal and received only publication notice of the resultant sale of the coal rights.  *Id*. at 56–57.  In fact, the notice erroneously listed strangers to the title as owners, although the Emery County records showed San Rafael to be the true owner of the assessed interest.  *Id*. at 57.   The trial court agreed that Kemmerer's due process rights were violated.  *Id*. at 55–56.

---

[5] *See* Docket No. 123-2, *BV Lending. LLC v. Jordanelle Special Serv. Dist.*, Case No. 100500444, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, dated August 26, 2011, at 5, attached as Ex. 2 to Defs.' Reply Mem. (denying claims of landowner within Area C on the grounds that "[o]n the day BVJ acquired the property, the assessment ordinance, notice of assessment, and assessment lien were all matters of public record.  Therefore, the adoption of the assessment ordinance, notice of assessment, and assessment lien did not cause injury to BVJ's interest in the property.  At the time of these events, BVJ did not even exist as a legal entity."); *See also B.V. Lending, LLC v. JSSD*, 294 P.3d 656 (Utah App. 2013) (affirming the district court's dismissal of the claims).

On appeal, the Tenth Circuit reversed the trial court, holding that Kemmerer's due process rights were not violated. *Id*. at 57–58. In so ruling, the Tenth Circuit held that it did not need to decide whether Kemmerer's due process rights were violated "because Kemmerer itself ha[d] suffered no due process injury":

> If a constitutional violation occurred, it was the taking of San Rafael's property without due process. Kemmerer thus seeks to advance its claim by asserting a third-party's constitutional rights. "[T]he general rule is that a litigant may only assert his own constitutional rights or immunities.'" *McGowan v. Maryland*, 366 U.S. 420, 429 (1961). This rule has been applied to bar a grantee's assertion that its grantor's due process rights were violated.

*Id*. (citations omitted). Like the plaintiff in *Kemmerer*, Plaintiff here asserts a third-party's (*i.e.,* Mr. Larson's and/or the other "Improvement District Landowners'") constitutional rights. As the Tenth Circuit found in *Kemmerer*, Plaintiff's claims based on a third-party's constitutional rights must fail. *See also Sac and Fox Nation of Mo. v. Pierce*, 213 F.3d 566, 573 (10th Cir. 2000) (stating that "a plaintiff generally must assert its own rights, rather than those belonging to third parties"); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973) ("Constitutional rights are personal and may not be asserted vicariously."). Here, there is no question that Plaintiff came into possession of title to Victory Ranch in 2012, years after the assessment lien came into existence and became a matter of public record. Plaintiff took title with actual knowledge of the assessment lien. Therefore, Plaintiff's due process rights could not have been violated by the 2005 Notice of Intention, the 2006 Creation Resolution, or the 2009 Assessment Ordinance, and no set of facts can change that conclusion. Accordingly, Plaintiff's claims must be dismissed.

D.     *The Notice of Intention Was Not False*

Even if VR Acquisitions had owned the Victory Ranch property in 2005, Plaintiff would have been entitled to nothing more than the statutory notice JSSD provided.  Plaintiff's case essentially turns on one allegation—that the 2005 Notice of Intention was false and misleading because it allegedly did not disclose that, among other things, Defendants intended to allow other property owners outside of Area C to benefit from the improvements, and that Defendants allegedly intended to personally benefit.  Even assuming the truth of Plaintiff's allegations, Plaintiff's case fails as a matter of law because the 2005 Notice of Intention did not require such disclosures.

The Utah legislature imposed a detailed list of requirements that each notice must include in order to create an improvement district.   *See* Utah Code Ann. § 17A-3-205 (2005).  The Act did not require JSSD to list in the notice the exact purposes for which assessment funds may be used.  Rather, the Act states that the notice need only describe, "in a general way[,] . . . the improvements proposed to be made" and state the "estimated cost of the improvements." *Id*. 17A-3-205(d), (e).  Moreover, "[i]f the actual cost of the improvements exceeds the estimated cost, the governing body may, nevertheless, levy assessments in excess of the estimated cost." *Id*. § 17A-3-205(e).  Defendants complied with and disclosed precisely what the Act required when JSSD issued the 2005 Notice of Intention.  The notice expressly revealed what each property owner within Area C's proportionate share of the costs of the Improvements was to be and identified how they would each benefit directly or indirectly from the Improvements.  The Defendants had no obligation to disclose whether property owners

16

outside of the designated assessment area may benefit in the future or at what cost. In fact, the Act expressly left that option to the governing body. *Id*. § 17A-3-205(2).

Reviewing the actual language of the Notice,[6] and the requirements of the Act, the court finds that the failure to disclose that non-assessed properties may also "benefit" from the public improvements is not actionable.

### IV.  CONCLUSION

Accordingly, for the foregoing reasons, the court HEREBY ORDERS that the District Defendants' Motion to Dismiss [Docket No. 86] is GRANTED, and all claims against the District Defendants are DISMISSED with prejudice. Wasatch County's Motion Joining in District Defendants' Motion [Docket No. 87] is GRANTED, and all claims against Wasatch County are DISMISSED for the same reasons. In addition, the pending Motion for Judicial Inquiry [Docket No. 91] is denied as MOOT, and the Clerk of Court is directed to close this case.

DATED this 1st day of September, 2015.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

---

[6] *See* Notice of Intention, Ex. A to Compl., at 4 (stating that the Improvements will be financed by an assessment levied "on the real estate lying within the Improvement District"); *id*. at 6 ("It is the intention of the Governing Authority to levy assessments as provided by the laws of Utah on all parcels of real property within the Improvement District benefitting by the proposed Improvements described herein.").